**In re Marcelo and Martha GOMEZ, Debtors.**

**Marcelo and Martha Gomez, Plaintiffs**

**v.**

**Wells Fargo Bank, N.A., Defendant.**

**Bankruptcy No. 5:08–bk–72134. Adversary No. 5:11–ap–7157.**

United States Bankruptcy Court, W.D. Arkansas, Fayetteville Division.

May 24, 2012.

Todd F. Hertzberg, Fayetteville, AR, for
Debtors.

Richard L. Ramsay, Alicia Austin Smith, Little Rock, AR, for Wells Fargo.

## ORDER

BEN BARRY, Bankruptcy Judge.

This is a case about reaffirmation agreements; specifically, a reaffirmation agreement entered into between the debtors and Wells Fargo Bank, N.A. [Wells Fargo] that was filed with the Court over three years ago. After Wells Fargo attempted to collect the reaffirmed debt, the debtors reviewed the reaffirmation agreement they had voluntarily entered into to determine whether it complied with 11 U.S.C. § 524(c), the reaffirmation provisions of the bankruptcy code. On November 14, 2011, the debtors filed their *Complaint Seeking Injunctive Relief Declaring Reaffirmation Agreement Null and Void and Seeking Damages For Violation of the Discharge Injunction.* On December 14, 2011, Wells Fargo filed its answer. The Court heard the case on April 18, 2012, and then allowed both parties until May 15, 2012, to file simultaneous post-trial briefs. After considering the evidence presented and the parties' briefs, the Court denies the relief requested by the debtors.

### Jurisdiction

The Court has jurisdiction over this matter under 28 U.S.C. § 1334 and 28 U.S.C. § 157, and it is a core proceeding under 28 U.S.C. § 157(b)(2)(O). The following opinion constitutes findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

### History

The debtors filed their chapter 7 voluntary petition on May 30, 2008, and included in their schedules a debt owed to Wells Fargo in the amount of $50,000, secured by a second mortgage on their residence located in Springdale, Arkansas. On their Statement of Intention, the debtors stated their intention to reaffirm the debt to Wells Fargo pursuant to § 524(c). On August 20, 2008, Wells Fargo filed an executed reaffirmation agreement on Official Form 240A relating to the subject debt; the reaffirmation agreement was signed by both debtors on July 21, 2008, the debtors' counsel at the time on August 4, 2008, and a representative of Wells Fargo on August 20, 2008. The debtors received their discharge on September 15, 2008, approximately one month later.

According to the debtors' complaint and Wells Fargo's answer to the complaint, Wells Fargo brought suit against the debtors in state court in May 2010 for a money judgment on the debt allegedly owed to Wells Fargo.[1] The debtors failed to respond to the suit and the state court entered a default judgment against the debtors and in favor of Wells Fargo in the approximate amount of $53,000 in September 2010. A corrected default judgment was entered in the state court in April 2011, and in July 2011 Wells Fargo initiated a Writ of Garnishment to garnish the wages of both debtors to enforce the default judgment. Present counsel for the debtors moved to reopen the debtors' bankruptcy case in September 2011 and filed this adversary proceeding in November 2011.

### Debtors' Arguments

The debtors presented three arguments related to the reaffirmation agreement. Their first argument is that the reaffirmation agreement between the debtors and

---

1. Neither party introduced the state court complaint, answer, default judgment, or corrected default judgment. However, the factual allegations contained in the debtors' complaint are not in dispute and are recited here.

Wells Fargo is legally deficient. The debtors' counsel succinctly presented what he believed to be the legal deficiencies during his closing argument. Specifically, the debtors argue that the reaffirmation agreement fails to comply with the following sections of the bankruptcy code:

1. § 524(k)(3)(C)(ii), which relates to disclosure of the total amount of debt being reaffirmed;

2. § 524(k)(3)(E)(i), which relates to the disclosure of interest rates;

3. § 524(k)(3)(F), which relates to variable rate transactions; and

4. § 524(k)(3)(H), which relates to repayment amounts and repayment schedules.

Additionally, the debtors believe that the reaffirmation agreement contains a high level of ambiguity.

The debtors' second argument is that the reaffirmation agreement is deceptive as to Martha Gomez because the agreement does not disclose on its face that Martha Gomez was being asked to reaffirm "an unsecured loan." According to the debtors, "Wells Fargo would have known that preparing the Agreement in this manner would cause an unsecured debtor to reasonably believe that the loan was secured by her property."

Finally, the debtors argue that because the reaffirmation agreement fails to meet the requirements of § 524(c), it is without effect and the underlying debt was properly discharged. As a result, the post-discharge collection activity by Wells Fargo is a violation of the discharge injunction under § 524(a).

### Findings of Fact and Conclusions of Law

#### Deficient Reaffirmation Agreement

█ The reaffirmation agreement that was filed with the Court and is the subject matter of this lawsuit was presented on the official form promulgated by the Administrative Office of the United States Courts—Form 240A—Reaffirmation Agreement (1/07). In April 2010, the Administrative Office promulgated an additional official reaffirmation agreement form. The new form is titled Form B240A; the original form, which was used by Wells Fargo, is now titled Form 240A/B ALT. The original form strictly complies with the provisions of § 524(c)(2) and (k); the new form only generally complies with the provisions of § 524(c)(2) and (k) but appears to be written to make it easier to understand. The introduction in 2010 of the new Official Form B240A belies an argument that the statutory requirements for disclosure under § 524(k) are to be strictly construed. According to a leading bankruptcy treatise, "[i]ndeed, the Reaffirmation Form promulgated by the Administrative Office of the United States Courts deviates somewhat from the language in the statute. Presumably, a creditor properly using this form would face little risk of litigation." 4 Collier on Bankruptcy ¶ 524.04[1], at 524-44-45 (16th ed.)(2011).[2]

**2.** The debtors reference five cases in their post-trial brief for the proposition that reaffirmation agreements must be construed strictly to preserve the debtors' fresh start. All of the cases reference § 524(c), which states that a reaffirmation agreement "is enforceable only to any extent enforceable under applicable nonbankruptcy law ... *only if ...*" the six provisions listed in the subsection are adhered to. 11 U.S.C. § 524(c) (emphasis added). However, only one of the cases cited references § 524(c)(2), the provision that requires subsection 524(k) disclosures to be made in the reaffirmation agreement.

Four of the five cases refer generally to § 524(c) and (d), and only one of those was decided after the Administrative Office published the new official form reaffirmation agreement that generally—not strictly—complies with the disclosures required under § 524(k). That case, a recent decision out of

The debtors' primary argument with regard to the reaffirmation agreement is that the agreement is legally deficient and, therefore, not binding on the debtors. The four deficiencies in the agreement enumerated specifically by the debtors' counsel related to § 524(k)(3)(C), (E), (F), and (H), which the Court will address below.

### § 524(k)(3)(C)(ii)

■ Under this subsection, the debtors argue that Wells Fargo was required to disclose separately the amount of debt being reaffirmed and the total fees and costs being reaffirmed in the reaffirmation agreement. Section 524(k)(3)(C) relates to the total amount of debt being reaffirmed and states:

> (3) The disclosure statement required under this paragraph shall consist of the following:
>
> . . . .
>
> (C) The "Amount Reaffirmed," using that term, which shall be—
>
> (i) the total amount of debt that the debtor agrees to reaffirm by entering into an agreement of the kind specified in subsection (c), and
>
> (ii) the total of any fees and costs accrued as of the date of the disclosure statement, related to such total amount.

11 U.S.C. § 524(k)(3)(C). According to this subsection, the "Amount Reaffirmed" includes the total amount of debt the debtor agrees to reaffirm *and* the total of any fees and costs as of the date of the reaffirmation agreement. The statute does not include a requirement that the amount of debt and the fees and costs be segregated. The next subsection, § 524(k)(3)(D), requires two additional statements, the first of which is "The amount of debt you have agreed to reaffirm." The Wells Fargo reaffirmation agreement consists of a completed Official Form 240A (now Form 240A/B ALT). The phrase "Amount Reaffirmed" appears on the first page in bolded, underlined, and capitalized letters, and is followed by the required phrase: "The amount of debt you have agreed to reaffirm," and lists the amount of $50,964.84. Beneath that line, in bolded and italicized lettering, appears the phrase: "The amount of debt you have agreed to reaffirm includes all fees and costs (if any) that have accrued as of the date of this disclosure." The statute requires no more and the Court finds that Wells Fargo complied with the requirements of § 524(k)(3)(C).

### § 524(k)(3)(E)(i)

■ Under this subsection, the debtors argue that the interest rate disclosed on the reaffirmation agreement must be disclosed in a specific manner with a clear distinction between Annual Percentage

Iowa, did not address the disclosure requirement under § 524(c)(2) and (k); rather, it discussed a court's authority to approve a reaffirmation agreement that was entered into after the debtors received their discharge. *In re McKeever,* No. 11–04187–als7, 2012 WL 1302621 (Bankr.S.D.Iowa April 16, 2012). The requirement for execution prior to discharge appears under § 524(c)(1). Because the court found that the debtors did not make their agreement prior to their discharge, the court held that the parties did not comply with § 524(c)(1) and the reaffirmation agreement was not valid.

The one case that addresses the disclosures required under § 524(c)(2) and (k) focuses on the lack of disclosures provided for in the parties' reaffirmation agreement, not the quality of those disclosures. *See In re Lee,* 356 B.R. 177 (Bankr.N.D.W.Va.2006). Even though the parties in that case each agreed to the reaffirmation of the debt, the court held that the reaffirmation agreements that were filed with the court were "pervasively defective" and lacked many of the required disclosures. *Id.* at 181.

Rate and simple interest. In relation to this argument, the debtors argue that the loan consists primarily of a fixed rate advance, not an open end credit plan, and that the wrong disclosure was provided. Section 524(k)(3)(E)(i) relates to the disclosure of interest rates in the agreement and states:

> (3) The disclosure statement required under this paragraph shall consist of the following:
>
> . . . .
>
> (E) The "Annual Percentage Rate", using that term, which shall be disclosed as—
>
> (i) if, at the time the petition is filed, the debt is an extension of credit under an open end credit plan, as the terms "credit" and "open end credit plan" are defined in section 103 of the Truth in Lending Act, then—
>
>> (I) the annual percentage rate determined under paragraphs (5) and (6) of section 127(b) of the Truth in Lending Act, as applicable, as disclosed to the debtor in the most recent periodic statement prior to entering into an agreement of the kind specified in subsection (c) or, if no such periodic statement has been given to the debtor during the prior 6 months, the annual percentage rate as it would have been so disclosed at the time the disclosure statement is given to the debtor, or to the extent this annual percentage rate is not readily available or not applicable, then
>>
>> (II) the simple interest rate applicable to the amount reaffirmed as of the date the disclosure statement is given to the debtor, or if different simple interest rates apply to different balances, the simple interest rate applicable to each such balance, identifying the amount of each

>> such balance included in the amount reaffirmed, or
>>
>> (III) if the entity making the disclosure elects, to disclose the annual percentage rate under subclause (I) and the simple interest rate under subclause (II);

11 U.S.C. § 524(k)(3)(E)(i). Wells Fargo testified that the SmartFit Home Equity Account Agreement entered into by the debtors was an open end credit plan consisting of two components—the primary loan on which the note was written (the account ending in 1998) and a sub-account containing a fixed-rate advance (the account ending in 1001). Because the debt is an extension of credit under the account ending in 1998 and is an open end line of credit, subsection 524(k)(3)(E)(i) applies. Under this subsection, the creditor is allowed to disclose the annual percentage rate of the reaffirmed debt either under subclause (I), subclause (II), or as a combination of both. Proceeding under subclause (I), Wells Fargo disclosed the annual percentage rate of the open end credit plan (the primary loan) as 7.87%. Wells Fargo then disclosed the simple interest rate of the fixed-rate advance account under subclause (II) as 11.00% and restated the annual percentage rate of the primary loan. These interest rates are the same rates that were disclosed on the May 31, 2008 statement the debtors received approximately one month prior to executing the reaffirmation agreement. (Defs.' Ex. 1.) Because the interest rate of the primary account and the sub-account were each disclosed, as required by the code, the Court finds that Wells Fargo complied with the requirements of § 524(k)(3)(E).

### § 524(k)(3)(F)

Under this subsection, the debtors argue that because the debt includes a variable rate and a fixed rate, the statement re-

quired under § 524(k)(3)(F) is ambiguous. Section 524(k)(3)(F) concerns variable rate transactions and states:

(3) The disclosure statement required under this paragraph shall consist of the following:

. . . .

(F) If the underlying debt transaction was disclosed as a variable rate transaction on the most recent disclosure given under the Truth in Lending Act, by stating "The interest rate on your loan may be a variable interest rate which changes from time to time, so that the annual percentage rate disclosed here may be higher or lower."

11 U.S.C. § 524(k)(3)(F). On page three of the Wells Fargo reaffirmation agreement, the following statement appears:

c. If the underlying debt transaction was disclosed as a variable rate transaction on the most recent disclosure given under the Truth in Lending Act:

The interest rate on your loan may be a variable interest rate which changes from time to time, so that the annual percentage rate disclosed here may be higher or lower.

As explained above, the underlying debt transaction between Wells Fargo and the debtors consisted of a variable rate open end credit plan that included a sub-account with a fixed rate advance. Because there is no difference in the statement that appears on Wells Fargo's reaffirmation agreement and what is required under the code, the Court finds that Wells Fargo complied with the requirements of § 524(k)(3)(F).

### § 524(k)(3)(H)

■ Finally, under this subsection, the debtors argue that Wells Fargo was required to use one of three optional statements and disclose the amount of the monthly payment. Section 524(k)(3)(H)

relates to repayment schedules and amounts and states:

(3) The disclosure statement required under this paragraph shall consist of the following:

. . . .

(H) At the election of the creditor, a statement of the repayment schedule using 1 or a combination of the following—

(i) by making the statement: 'Your first payment in the amount of $___ is due on ___ but the future payment amount may be different. Consult your reaffirmation agreement or credit agreement, as applicable', and stating the amount of the first payment and the due date of that payment in the places provided;

(ii) by making the statement: 'Your payment schedule will be:', and describing the repayment schedule with the number, amount, and due dates or period of payments scheduled to repay the debts reaffirmed to the extent then known by the disclosing party; or

(iii) by describing the debtor's repayment obligations with reasonable specificity to the extent then known by the disclosing party.

11 U.S.C. § 524(k)(3)(H). As stated in the statute, subsection 524(k)(3)(H) is optional "at the election of the creditor." In fact, the Official Form used by Wells Fargo contains the following statement in italics: "Optional—At the election of the creditor, a repayment schedule using one or a combination of the following may be provided." The Official Form then sets forth three options separated individually by the word "or." The first option is the following statement: "Your first payment in the amount of $___ is due on ___ (date) but the future payment amount may be differ-

ent. Consult your reaffirmation agreement or credit agreement, as applicable." This statement comports with the first option under subsection 524(k)(3)(H). The second option is the statement: "Your payment schedule will be: ___ (number) payments in the amount of $___ each, payable (monthly, annually, weekly, etc.) on the ___(day) of each ___ (week, month, etc.), unless altered later by mutual agreement in writing." This statement comports with the second option under subsection 524(k)(3)(H). Finally, the third option allows for a "reasonably specific description of the debtor's repayment obligations to the extent known by the creditor or creditor's representative." This statement comports with the third option under subsection 524(k)(3)(H).

Wells Fargo opted to include a reasonably specific description of the debtors' repayment obligations in its reaffirmation agreement, the third option described above. It stated specifically, under the heading *Repayment Schedule,* the following requirements:

The Debtor(s) agrees to pay Creditor the sum of $50,964.84, plus interest thereon computed from 05/30/2008 on Account Number xxxx071998 & xxxx071001. The interest rate on Account Number xxxx071998 as of the date of this Reaffirmation Agreement is 7.87% per annum. The interest rate, however, on Account Number xxxx071998 shall vary according to the terms set forth in the Debtor(s)' loan or line of credit agreement. The amount of the Debtor(s)' minimum monthly payment shall be calculated according to the terms set forth in the Debtor(s)' loan or line of credit agreement and shall be

applied to interest only. The Debtor(s)' first monthly payment shall be due on 06/20/2008 and continuing on the same day of each succeeding month thereafter until 26–JUN–47 when the entire outstanding principal balance, plus interest, on Account Number xxx071998 shall be due and payable in full.

The interest rate on Account Number xxxx071001 as of the date of this Reaffirmation Agreement is 11.00% per annum. The amount of the Debtor(s)' minimum monthly payment shall be calculated according to the terms set forth in the Debtor(s)' loan or line of credit agreement and shall be applied to interest only. The Debtor(s)' first monthly payment shall be due on 06/20/2008 and continuing on the same day of each succeeding month thereafter until 20–July–14 when the entire outstanding principal balance, plus interest, on Account Number xxxx071001 shall be due and payable in full.

Even though the disclosure of a repayment schedule appears to be optional under the code, Wells Fargo included a specific description of the debtors' obligations in its reaffirmation agreement, referring directly to the debtors' loans or line of credit agreements. The Court is not aware of a specific requirement in the code that the creditor disclose the amount of each monthly payment, although that is typically included in reaffirmation agreements.[3] Accordingly, the Court finds that Wells Fargo complied with the optional requirements of § 524(k)(3)(H).

Related to this subsection, the debtors also argue that without the disclo-

---

**3.** In this instance, prior to entering into the reaffirmation agreement, the debtors authorized Wells Fargo to continue sending the debtors monthly statements for both accounts. (Defs.' Ex. 4.) The statements included the

interest rates and the amount of the current payment and the debtors received a statement approximately one month prior to executing the reaffirmation agreement. (Defs.' Ex. 1.)

sure of a monthly payment, it would have been difficult for the Court to determine whether there was a presumption of an undue hardship as defined by the code. Hence, the debtors argue that the Court should have held a hearing to determine whether the reaffirmation should have been approved. *See* 11 U.S.C. § 524(k)(3)(J)(i)(6). However, the Court believes that the attorney certification stating that the agreement does not impose an undue hardship resolves that issue. Without an undue hardship, court review is not required and may not even be allowed. There is no provision in the code that permits a court to scrutinize a reaffirmation agreement when the debtors are represented by counsel and there is not a presumption of undue hardship. *Bay Federal Credit Union v. Ong (In re Ong)*, 461 B.R. 559, 563 (9th Cir. BAP 2011). Without an undue hardship, the reaffirmation agreement is effective upon filing if the other provisions of § 524(c) are met. *Id.* at 562 (holding that once the requirements of § 524(c) are met, the agreement is effective and enforceable upon filing, unless there is a presumption of undue hardship).

Based on the above findings, the Court concludes as a matter of law that the reaffirmation agreement that is the subject of the debtors' adversary proceeding complies with the statutory requirements of § 524(c) and (k) and the Court denies any relief under this claim.

### Deceptive Reaffirmation Agreement

■ The debtors' second argument is that the reaffirmation agreement was de-ceptive as to Martha Gomez because she was being asked to reaffirm "an unsecured loan." As stated earlier, the reaffirmation agreement that was filed with the Court was the official form promulgated by the Administrative Office of the United States Courts. This particular form includes all of the required provisions under § 524(c) and (k), including the required certification by the debtors' counsel that

(A) such agreement represents a fully informed and voluntary agreement by the debtor;

(B) such agreement does not impose an undue hardship on the debtor or a dependent of the debtor; and

(C) the attorney fully advised the debtor of the legal effect and consequences of—

(i) an agreement of the kind specified in this subsection; and

(ii) any default under such an agreement;

11 U.S.C. § 524(c)(3). This certification by the debtors' counsel negates the debtors' argument that the reaffirmation agreement was deceptive as to Martha Gomez. Neither debtor was under an obligation to enter into the voluntary reaffirmation agreement and, according to their counsel's certification, they were advised of the legal effect of the reaffirmation agreement. Even though the deed to the subject property reflected only Marcelo Gomez as the Grantee, Martha Gomez was obligated on the debt that is the subject of the reaffirmation agreement and chose to reaffirm that obligation.[4]

---

4. The warranty deed that transferred the real property to Marcelo Gomez identified Marcelo Gomez as a married person. Likewise, the mortgage that secured the reaffirmed obligation also identified Marcelo Gomez as a married person. Martha Gomez executed the mortgage to Wells Fargo with a notation following her signature that she was "signing as nonvested spouse," apparently recognizing her interest in the property as Marcelo Gomez's spouse. Finally, and of particular relevance to the reaffirmation agreement before the Court, the SmartFit Home Equity Account Agreement indicates clearly on the first page that the borrowers are Marcelo Gomez and Martha M. Gomez, obligating both debtors on

Marcelo Gomez testified that he and Martha Gomez entered into the reaffirmation agreement because they wanted to keep the real property, which was their home. There was no allegation that Martha Gomez was coerced into signing the reaffirmation agreement or that the debtors' counsel acted improperly with regard to the reaffirmation agreement. *See In re Ong,* 461 B.R. at 563 (stating that the only time a court should concern itself with an attorney-certified reaffirmation agreement when there is no presumption of undue hardship is when there has been a Rule 9011 violation by the attorney). Accordingly, the Court finds that because Martha Gomez was represented by counsel when she entered into the agreement, the debtors' argument that the reaffirmation agreement was deceptive as to Martha Gomez fails and the Court denies any relief under this claim.

**Violation of Discharge Injunction**

The debtors' third argument is that Wells Fargo violated the discharge injunction under § 524(a). This argument is premised upon the reaffirmation agreement being invalid because it failed to meet the requirements of § 524(c). Based on the Court's earlier conclusion that the reaffirmation agreement complies with § 524(c) as a matter of law, the debtors' third argument is moot and the Court denies any relief under this claim.

**Conclusion**

For the reasons stated above, the Court concludes as a matter of law that the reaffirmation agreement between Wells Fargo and the debtors that was filed in this case on August 20, 2008, complied with the requirements of § 524(c) and is a valid reaffirmation agreement. Accordingly, the debtors' *Complaint Seeking Injunctive*

the note. This Agreement is the subject of the reaffirmation agreement and is the debt obli-

*Relief Declaring Reaffirmation Agreement Null and Void and Seeking Damages For Violation of the Discharge Injunction* is denied.

IT IS SO ORDERED

gation that the debtors reaffirmed.